IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES LUZADER, | ) | CASE NO. 5:14-CV-1734 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff James Luzader's ("Plaintiff" or "Luzader") applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

**I. PROCEDURAL HISTORY**

Plaintiff filed a previous application for Disability Insurance benefits on August 14, 2009, alleging disability beginning March 31, 2007. (Tr. 135). The claim was ultimately denied by administrative law judge ("ALJ") David Brash in a decision dated June 3, 2011. (Tr. 135-48). The Appeals Council denied review. (Tr. 33). Consequently the ALJ's decision became the final decision of the Commissioner. Luzader did not pursue a further appeal of this decision.

1

In July 2011, Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income benefits. (Tr. 249-57). Luzader alleged he became disabled beginning on June 4, 2011, due to severe back problems, chronic pain, and a learning disability. (Tr. 249, 251, 289). The Social Security Administration denied Plaintiff's applications on initial review and upon reconsideration. (Tr. 213-15, 221-22).

At Plaintiff's request, ALJ Yelanda Collins convened an administrative hearing on February 13, 2013, to evaluate his applications. (Tr. 63-104). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Gene Burkhammer, also appeared and testified. (*Id.*).

On March 28, 2013, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 33-55). After applying the five-step sequential analysis,[1] the ALJ determined Luzader retained the ability to perform work existing in significant numbers in the national economy. (*Id*.).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 27, 331-34). The Appeals Council denied his request for review, making the ALJ's March 28, 2013, determination the final decision of the Commissioner. (Tr. 2-5). Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. EVIDENCE

### A. Education and work history

In 1977, when Plaintiff was in the sixth grade, he underwent psychological testing to determine eligibility for special education assistance. (Tr. 274-76). Plaintiff scored at the mid-first grade level in word recognition and spelling on the Wide Range Achievement Test ("WRAT"). (Tr. 275). It was recommended that Luzader be placed in special education classes. (Tr. 276).

Luzader completed school through the eighth grade. (Tr. 52, 71, 289). During the administrative hearing, Plaintiff testified that he was enrolled in special education classes beginning at age nine. (Tr. 72). Luzader also testified that despite completing the eighth grade, he was simply "pushed" through and not actually able to complete the course work. (*Id.*).

In 1982, Luzader underwent psychological testing to evaluate his mental abilities. (Tr. 272-73). At the time of this testing, he was 18-years-old and desired to return to school after having withdrawn to work and support his family. (Tr. 272). On the WRAT, Plaintiff had a reading score at the 4.5 grade level and a spelling score at the 2.4 grade level. (*Id.*). On a Gilmore Oral Reading Test, Luzader's reading accuracy was at the 1.2 grade level and reading comprehension was at the 1.9 grade level. (*Id.*). The test administrator opined that an individual with Luzader's age and IQ should be able to achieve scores at a sixth grade level. (*Id.*). The

---

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

administrator further stated that if Plaintiff were to return to school, he would require remedial help, particularly in reading, and ought to be placed in developmentally handicapped classes. (Tr. 273).

Plaintiff worked as a nursing assistant from 1995 through 2005 and a caretaker from July 2005 to March 2007. (Tr. 277). Luzader's disability application indicated that when he worked as a nursing assistant, other people completed written reports for him. (Tr. 279-81). Luzader also stated that he was fired from a nursing assistant position because he could not complete reports. (Tr. 280). He testified that a friend helped him apply for the nursing aide job. (Tr. 74).

### B. Testimony and other statements

During the administrative hearing, Luzader reported that he had a computer in his home, but he did not use it. (Tr. 85). Plaintiff did not read the newspaper, and his wife or son read his mail for him. (Tr. 85-86). Luzader testified that he could not read a grocery list and that his wife read him medication instructions. (Tr. 86).

In August 2009, an occupational therapist noted that Plaintiff could not read and had his wife fill out his paperwork. (Tr. 427). During November 2011, Luzader expressed to a therapist that he felt like a bad father because he could not read and did not know his child had a school play. (Tr. 809).

On August 2, 2012, Plaintiff presented to the hospital emergency department due to slurred speech. (Tr. 967). An in-take report explained that Luzader had "googled his medications to see if that may be the cause of his slurred speech, and after review, he determined that it was not." (*Id.*). In November 2012, Plaintiff complained to a therapist that others did not respect him because he could not read or write. (Tr. 1216).

4

### C. Additional vocational information

Plaintiff was born on January 6, 1964, and was 47-years-old on the date of his alleged disability onset. (Tr. 52, 249). He was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d).

During the administrative hearing, the VE testified that Plaintiff's work as a nurse aid or assistant[2] qualified as past relevant work. (Tr. 96). The VE further explained that this past work was classified at a Specific Vocational Preparation ("SVP") level of 4, but had no transferable skills to the sedentary range of work. (*Id.*).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since June 4, 2011, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease ("DDD") of the lumbar spine with neuritis and radiculopathy; chronic obstructive pulmonary disease ("COPD"); major depressive disorder; anxiety disorder; and borderline intellectual functioning ("BIF").

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that he is further limited as follows: The claimant can frequently push and/or pull with the bilateral lower extremities, as in the operation of foot controls; occasionally climb ramps or stairs, balance, stoop, kneel, or crouch; never crawl or climb ladders, ropes, or scaffolds; should have no occupational exposure to unprotected heights or moving mechanical parts; should avoid concentrated exposure to humidity or wetness, to extreme heat and extreme cold, and to pulmonary irritants; can have occasional exposure to vibration and can occasionally operate a motor vehicle; can understand, remember, and carry out simple, routine, and repetitive tasks that involve

---

[2] Nurse Assistant or Nurse Aide (DOT 355.674-014), 1991 WL 672944 (Jan. 1 2008).

5

   simple decision-making; and is limited to a low stress work environment, which includes no production-rate pace of work and infrequent changes that are gradually introduced.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on January 6, 1964 and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

   . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 4, 2011, through the date of this decision.

(Tr. 36-54) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

6

"Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

### VI. ANALYSIS

Luzader contends that the ALJ erred because he ought to have been found disabled under the medical vocational rules. The medical vocational rules or guidelines only apply to a claimant when all factors (i.e., age, work experience, physical ability, and education) meet the requirements as set forth in the grid. *LaFond v. Comm'r of Soc. Sec.*, No. 1:10-CV-371, 2011 WL 2650683, at *4 (W.D. Mich. June 13, 2011). As the Sixth Circuit has explained,

> In general, where the characteristics of a claimant exactly match the characteristics in one of the rules of Appendix 2, the guidelines determine whether significant numbers of other jobs exist for the person or whether that person is disabled. However, in a situation where impairments do not precisely match any specific rule, the guidelines are used as a framework to determine whether a claimant is disabled.

*Range v. Soc. Sec. Admin.*, 95 F. App'x 755, 757 (6th Cir. 2004) (internal citations omitted); 20 C.F.R. §§ 404.1569a(d), 416.969a(d) (delineating when the rules in Appendix 2 should apply).

In concluding that Luzader was not disabled, the ALJ found that Plaintiff was a younger individual age 45 to 49 and was limited to sedentary work. (Tr. 41, 52). The ALJ categorized Plaintiff's education level as a "limited education." (Tr. 52). The VE identified Plaintiff's past relevant work as a nurse assistant with an SVP level 4. (Tr. 96). This position was classified as semi-skilled work,[3] but had no transferable skills. (Tr. 51, 96). Based on these factors, the ALJ concluded that the medical vocational rules would direct a finding of "not disabled." (Tr. 52). The ALJ thus did not apply Appendix 2, but instead relied on the testimony of a VE to find that Luzader could perform a significant number of jobs with his particular RFC and vocational characteristics. (Tr. 52-54).

Luzader now asserts that Appendix 2 directs a finding of "disabled" for individuals age 45 to 49 who:

>  (i) Are restricted to sedentary work,
>  (ii) Are unskilled or have no transferable skills,
>  (iii) Have no past relevant work or can no longer perform past relevant work, and
>  (iv) Are unable to communicate in English, or are able to speak and understand English but are unable to read or write in English.

20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 201.00(h)(1)(i)-(iv). Luzader argues that he meets these requirements, taking particular issue with the fourth prong of the inquiry. He maintains that the ALJ erred by concluding his educational abilities fell into the category of "limited education" rather than "illiteracy."

---

[3] The Dictionary of Occupation Titles ("DOT") lists a SVP level for each described occupation. 20 C.F.R. §§ 404.1568, 416.968. Unskilled work corresponds to a SVP of 1-2; semi-skilled work corresponds to a SVP of 3-4; and skilled work corresponds to a SVP of 5-9. *Id.*

8

The regulations provide a framework for evaluating an individual's educational abilities, setting out four different categories or levels. 20 C.F.R. §§ 404.1564(b), 416.964(b). "Illiteracy" is considered the lowest level of education and is defined as "the inability to read or write." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). A claimant is considered illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *Id.* "Generally, an illiterate person has had little or no formal schooling." *Id.*

The regulations define the next-higher level of education, marginal education, to mean "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a sixth grade level or less is a marginal education." 20 C.F.R. §§ 404.1564(b)(2), 416.964(b)(2).

Finally, the regulations define the next-higher level of education, limited education, to mean "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3). An education from the seventh through the eleventh grade is considered a limited education. *Id.*

The regulations state that when determining an individual's educational abilities, the importance of an educational background may depend on how much time has passed between the completion of formal education and the beginning of any physical or mental impairments, as well as what the individual has done with his education in a work setting. 20 C.F.R. §§ 404.1564(b), 416.964(b). As a result, the numerical grade level an individual completed in school may not represent actual educational abilities, which could be higher or lower. *Id.* A numerical grade level is properly used to determine a claimant's educational abilities only when

9

contradictory evidence does not exist. *Id.*; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 450 (6th Cir. 1990). The Sixth Circuit has also explained that a number of factors may be relevant to determining the intellectual ability of an individual, including education level; past work experience and the kind of responsibility the individual had; an individual's daily activities or hobbies; the results of testing; and how well the individual is able to communicate in English. *Range v. Soc. Sec. Admin.*, 95 F. App'x 755, 757 (6th Cir. 2004) (*citing* 20 C.F.R. § 404.1564).

Luzader argues that his completion of the eighth grade should not be determinative of his education level, because the record shows that he is illiterate. Plaintiff points to various pieces of evidence, including his placement in special education classes, his Gilmore Oral reading test scores, his inability to complete paperwork independently on the job, and various statements he has made about being unable to read.

The Commissioner argues that pursuant to the *res judicata* rule of *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 2004) and Acquiescence Ruling 98-4(6), the ALJ was obligated to find that Plaintiff had a limited education, because ALJ Brash, who evaluated Plaintiff's prior disability applications, found that Plaintiff had a limited education.

Principles of *res judicata* apply to administrative decisions concerning an individual's eligibility for social security benefits. In *Drummond* the Sixth Circuit held that where an ALJ has made a final decision concerning a claimant's entitlement to benefits, the ALJ is bound by this determination, absent changed circumstances. 126 F.3d at 842. The Commissioner has recognized the binding effect of findings made in a prior adjudication on subsequent adjudicators:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law.

Acquiescence Ruling 98-4(6).

In *Caudill*, the Sixth Circuit applied the *Drummond* rule to find that an ALJ could adopt another ALJ's findings that a claimant had limited education and was not illiterate where the claimant introduced no new or additional evidence with respect to illiteracy versus limited education when he went before a second ALJ. *Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 514-16 (6th Cir. 2011). While the Court found that the application of *Drummond* was appropriate, the Court concluded that it was not clear whether the subsequent ALJ had adopted the prior finding of limited education or made an independent finding. *Id.* The Court held that the subsequent ALJ may well have made a new finding, and upon review, affirmed the ALJ's independent conclusion because it was supported by substantial evidence. *Id.*

In this case, it is not entirely clear whether the ALJ reached her finding with regard to Plaintiff's limited education independently or pursuant to the *Drummond* rule. Like ALJ Brash, the ALJ found that Plaintiff was not illiterate, but instead had a limited education. When discussing Plaintiff's allegations of illiteracy, the ALJ stated that she "adopts ALJ Brash's review of the claimant's 1982 formal reading testing and his actual educational progress through the completion of the 8th grade." (Tr. 52). The ALJ then cited to ALJ Brash's education level analysis. (*Id.*).[4] However, the ALJ did not indicate that she adopted ALJ Brash's finding of a

---

[4] ALJ Brash found that Plaintiff's allegation of illiteracy was inconsistent with Plaintiff's extended history of semi-skilled work as a nurse's assistant and history of repairing automobiles as a hobby. (Tr. 147). ALJ Brash also relied on the results of the WRAT test. After pointing out that Plaintiff's scores on the Gilmore test placed him at the first grade level, ALJ Brash went on to explain that performance on

limited education, but instead went on to emphasize the results of the WRAT. At the beginning of her opinion, the ALJ discussed the *Drummond* rule only in the context of Plaintiff's limitation to sedentary work, rather than other findings required in the sequential evaluation process. (Tr. 33). The ALJ found that new and material evidence warranted more restrictive physical limitations than those ALJ Brash assigned. (*Id.*).

The Commissioner, too, acknowledges that the ALJ may have reconsidered Plaintiff's literacy independently. In addition, the Commissioner states that there was new evidence before the ALJ regarding Plaintiff's ability to read and write. Specifically, a treatment provider's note suggesting that Plaintiff had independently performed an internet search and reviewed the results. The ALJ relied on this new evidence to some degree in evaluating Plaintiff's literacy. (Tr. 49).

Assuming for the purpose of this analysis that *Drummond* does not apply here, and the ALJ made an independent finding on the evidence before her, substantial evidence nevertheless supports the ALJ's conclusion that Plaintiff was not illiterate. The ALJ based this conclusion on a number of factors, including Plaintiff's completion of the eighth grade. The ALJ also acknowledged that Plaintiff's performance on the 1982 Gilmore Oral Reading test[5] showed reading achievement at a low level, but also pointed out that Plaintiff's scores on the WRAT showed higher scores in reading and spelling. (Tr. 52). This test indicated Plaintiff performed at the fourth and second grade levels. (*Id.*).

The ALJ further found that Plaintiff's statements regarding the severity of his limitations, which Plaintiff now argues support a finding of illiteracy, were not fully credible. (Tr. 49, 52). The ALJ highlighted ALJ Brash's finding that Plaintiff made inconsistent statements about why

---

"diagnostic intellectual testing" (the WRAT test on which Plaintiff's performance in reading and spelling were higher than at the first grade level) nonetheless undermined Plaintiff's allegations of illiteracy. (*Id.*).
[5] The ALJ referred to the Glimore test as the "1982 formal reading testing." (Tr. 52).

he left his most recent past work as a janitor, which Plaintiff does not now contest. (Tr. 49, 145). While at times Plaintiff insisted that he was about to be terminated from the position due to an inability to complete paperwork, at other points he stated that he voluntarily quit to care for two foster children. (*Id.*). The ALJ also highlighted treatment notes reflecting that Plaintiff was confronted about exaggerating medical issues, which called into question the reliability of Plaintiff's statements about his physical and mental limitations. (Tr. 49).

The ALJ acknowledged Plaintiff's report that he required assistance to complete paperwork on the job and that his wife did any reading for him. (*Id.*). The ALJ, however, observed that an emergency room account stated that Plaintiff had conducted an internet search to determine if his medications caused slurred speech and concluded they did not. (*Id.*). The ALJ found that this statement demonstrated a higher reading capacity than alleged and was contradictory to testimony that Plaintiff did not use his home computer. (*Id.*).

Luzader asserts that the isolated comment about an online search does not eliminate the possibility that he asked his wife or son to perform the search for him, and the ALJ should not have accorded the statement greater weight than objective testing. Despite Plaintiff's argument, the ALJ was entitled to consider the statement. While the ALJ could have questioned Plaintiff about the statement during the administrative hearing, Plaintiff does not point to authority requiring the ALJ to do so. Given the balance of the record reflecting Plaintiff's statements that he needed assistance to read, the statement is not dispositive of Plaintiff's abilities. Nevertheless, the ALJ did not give it undue weight and the statement suggests that Luzader independently conducted and evaluated an internet search. More important, however, are Plaintiff's scores on intellectual testing, specifically his second WRAT, which showed that he functioned at higher level than illiteracy. Luzader also completed schooling through the eighth

grade. Additionally, the ALJ recounted Plaintiff's prior work history, which showed that Plaintiff worked successfully for a number of years. (Tr. 51). Plaintiff bases much of his argument that he is illiterate on self-reports that he is severely limited in his ability to read and write, but the ALJ gave good reasons for questioning Plaintiff's credibility.

Plaintiff alleges that the ALJ failed to consider the record as a whole when evaluating his intellectual abilities. However, an ALJ can consider all the evidence without directly addressing in the written decision every piece of evidence submitted by a party. *Kornecky v. Com'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (*quoting Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). Here, a review of the ALJ's opinion reflects that the ALJ sufficiently reviewed the evidence and substantiated her literacy determination. The ALJ discussed Plaintiff's testimony regarding his ability to read; educational history; intellectual testing, including the Gilmore test and WRAT; the work history report submitted as part of the disability application; statements made to healthcare providers; and ALJ Brash's prior analysis and conclusion that Plaintiff had a limited education. The Court finds that this discussion was sufficient and demonstrates the ALJ's consideration of the record as a whole.

On review, it is the Court's responsibility to determine whether there is substantial evidence in the record to support the Commissioner's decision. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009). Even if there is evidence supporting the opposite conclusion, the undersigned must defer to the ALJ's finding if it is supported by substantial evidence. *Id*. In the present case, there may be contrary evidence regarding Plaintiff's education level, but substantial evidence supports the ALJ's decision that Plaintiff was not illiterate.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: June 4, 2015.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).